## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PATRICIA JACKSON** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 20-1005** |
| | * | |
| **AVONDALE INDUSTRIES INC. ET AL** | * | **SECTION "L" (5)** |

---

### ORDER & REASONS

Pending before the Court is Defendant Hopeman Brothers, Inc.'s ("Hopeman") Motion for Reconsideration, R. Doc. 11. In support of its motion, Hopeman has submitted a Supplemental Brief in Further Support of Hopeman's Motion for Reconsideration and Basis for Federal Court Jurisdiction, R. Doc. 25-3. Plaintiff opposes the motion, R. Doc. 30, and has filed a Motion to Strike Exhibits Submitted by Hopeman in connection with its supplemental brief, R. Doc. 26. Hopeman opposes the motion to strike. R. Doc. 31.

Oral argument was held on Tuesday, June 16, 2020 by telephone. Having considered the parties arguments and the applicable law, the Court now rules as follows.

### I.   BACKGROUND

This case arises out of Plaintiff Patricia Jackson's diagnosis of malignant mesothelioma, which she contends was caused by exposure to asbestos products while employed by Avondale Shipyard between 1970 and 1977. R. Doc. 1-2 ¶ 9. Plaintiff also contends she was exposed to asbestos fibers located on her father's work clothing while he was employed by Avondale between 1962 and 1976. R. Doc. 1-2 ¶ 10. Based on these factual allegations, Plaintiff filed suit against a number of Defendants including Huntington Ingalls Incorporated, Albert L. Bossier, Jr., and Lamorak Insurance Company (collectively, the "Avondale Defendants"), Taylor Seidenbach, International Paper, Eagle, Inc., Liberty Mutual Insurance Company, and Hopeman in state court.

1

R. Doc. 1-2.

The case was removed to federal court on March 25, 2020 by the Avondale Defendants following the United States Court of Appeals for the Fifth Circuit's decision in *Latiolais v. Huntington Ingalls, Inc.*, which altered the standard for removal under 28 U.S.C. § 1442(a), the Federal Officer Removal Statute. Essentially, the Avondale Defendants premised removal on the allegation that Plaintiff's claims against the Avondale Defendants stem from actions taken at the direction of a federal officer—namely, the construction of ships for the United States Navy and the United States Maritime Administration ("MARAD"). R. Doc. 1 at 5.

Shortly after removal, Plaintiff settled her claims against the Avondale Defendants. She accordingly filed a motion to remand challenging the merits of the removal and arguing that irrespective of the merits, the case ought to be remanded because the basis for federal jurisdiction—the federal officer statute—existed only with respect to the Avondale Defendants. R. Doc. 7. Additionally, the Avondale Defendants filed a motion to withdraw the notice of removal, explaining that the claims against them had been settled. R. Doc. 8. Oppositions to Plaintiff's motion to remand were due on May 5, 2020. Receiving no oppositions by May 5, 2020, the Court granted the remand, finding that the basis for removal was no longer applicable as Plaintiff had settled with the removing Avondale Defendants. R. Doc. 9.

## II.  PENDING MOTIONS

### A.  Defendant's Motion for Reconsideration [R. Doc. 11]

Hopeman has filed a motion for reconsideration of the remand order. R. Doc. 11. Hopeman explains that the Avondale Defendants failed to file a Notice of Compliance as required by 28 U.S.C. § 1446, which resulted in Hopeman not being notified of the pendency of the motion to remand or, for that matter, the remand order. R. Doc. 11 at 1. Hopeman argues that this failure

deprived it of the opportunity to oppose the motion to remand, and requests that the Court rescind its May 11, 2020 Order and Reasons to allow the jurisdictional issues to be fully briefed. R. Doc. 11 at 2. Hopeman stresses that like the Avondale Defendants, it has been sued in connection to work completed at the direction of the federal government and accordingly also satisfies the basis for federal officer removal. R. Doc. 11 at 2. Hopeman seeks expedited consideration of this motion on the grounds that Plaintiff has sought an expedited trial in state court. R. Doc. 15.

Because Hopeman's original motion for reconsideration was filed expeditiously to ensure the Court was aware of the filing issues that prevented Hopeman from timely opposing the motion to remand, Hopeman was granted an opportunity to file a supplemental brief addressing the merits of its jurisdictional argument. R. Doc. 24. In its supplemental brief, Hopeman argues it is entitled to federal officer removal under § 1442 in light of *Latoilais v. Huntington Ingalls Incorporated*, 951 F.3d 286 (5th Cir. 2020). R. Doc. 25-3. Specifically, Hopeman argues it asserts two "colorable federal defenses," namely official and derivative sovereign immunity and the government contractor defense, because the conduct giving rise to Plaintiff's claims against Hopeman is associated with acts performed at the direction of the federal government. Hopeman also asserts that diversity jurisdiction exists.

Plaintiff opposes reconsideration, R. Doc. 23, and has filed a supplemental brief in opposition to the merits of Hopeman's jurisdictional argument, R. Doc. 30. Essentially, Plaintiff argues reconsideration should be denied because 1) Hopeman cannot take advantage of the government contractor defense as it was never a government contractor; 2) Hopeman cannot take advantage of the government contractor defense or derivative sovereign immunity because it cannot show conformity with federal contractual obligations; 3) Hopeman cannot take advantage of the government contractor defense because it has presented no admissible evidence that it

3

warned the government of the dangers of its asbestos-related work at Avondale; 4) Hopeman's challenged conduct was not taken under color of federal office because Hopeman was not performing work pursuant to a government contract; 5) Hopeman cannot "clearly establish" that it is entitled to the "extraordinary remedy" of reconsideration; 6) the need to prevent manifest injustice weighs against reconsideration as Plaintiff is terminally ill and further delaying this trial presents the risk that Plaintiff may not survive to have her day in court; and 7) Hopeman cannot establish improper joinder to establish diversity jurisdiction because the non-diverse defendants remain viable in this case. R. Doc. 30 at 3.

**B. Plaintiff's Motion to Strike [R. Doc. 26]**

Plaintiff has filed a Motion to Strike a number of exhibits attached to Hopeman's Supplemental Brief discussing its alleged basis for federal jurisdiction. R. Doc. 26. Specifically, Plaintiff seek to strike the following exhibits:

- Exhibit "G" – Alleged excerpts of specifications for Coast Guard Cutters [R. Doc. 25-4];
- Exhibit "H" – Affidavit of Christopher P. Herfel, dated May 29, 2020, in *Landreaux v. Huntington Ingalls Incorporated, et al*, No. 20-1208, Eastern District of Louisiana [R. Doc. 25-5];
- Exhibit "I" – Deposition of Felix Albert, dated August 13, 1996, in *Anderson et al v. Asbestos Corporation Ltd. et al*, No. 96-2395, Eastern District of Louisiana [R. Doc. 25-6];
- Exhibit "J" – Alleged excerpts of subcontract with joiner specification for various vessels [R. Doc. 25-7];
- Exhibit "K" – Affidavit of Danny R. Joyce, dated May 15, 2019, in *March v. Anco Insulations, Inc., et al*, No. 19-9339, Eastern District of Louisiana [R. Doc. 25-8];
- Exhibit "L" – Alleged excerpts of joiner specifications for Coast Guard Cutters [R. Doc. 25-9];
- Exhibit "M" – Alleged excerpts of specifications for Coast Guard Cutters [R. Doc. 25-10];
- Exhibit "N" – Deposition of Frederick M. Toca, Ph.D., C.I.H., dated March 7, 2017, in *Chin v. Reilly Benton Company, Inc., et al*, No. 16-14669, Civil District Court for Parish of Orleans [R. Doc. 25-11];
- Exhibit "O" – Affidavit of Edward Blanchard, dated June 30, 2005, State of Louisiana, Parish of Jefferson [R. Doc. 25-12];
- Exhibit "P" – Deposition of Peter Territo, dated July 30, 2004, in *Breaux v. Avondale Industries, Inc.*, No. 2001-5871, Civil District Court for Parish of Orleans [R. Doc. 25-13];

4

- Exhibit "Q" – Deposition of Richard A. Lemen, Ph.D., dated January 10, 2014, in *Poche v. Avondale Industries, Inc., et al*, Civil District Court for Parish of Orleans [R. Doc. 25-14];
- Exhibit "R" – Alleged excerpts of M.A.R.A.D. specifications for Lykes vessels [R. Doc. 25-15];
- Exhibit "S" – Alleged excerpts of specifications for LASH Cargo Vessels [R. Doc. 25-16]

Essentially, Plaintiff argues that Hopeman must support its entitlement to a federal defense with "competent evidence" that would be considered in a motion for summary judgment context and that the aforementioned exhibits are all inadmissible under the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. First, Plaintiff objects to the majority of exhibits on the grounds that they do not mention Hopeman and accordingly are irrelevant to the instant case. Second, Plaintiff argues the affidavits and depositions prepared for other cases is inadmissible under Federal Rules of Civil Procedure 32 and Federal Rules of Evidence 804. Plaintiff also specifically objects to the affidavit of Christopher Herfel on the grounds that he is unqualified to testify as an expert and lacks the personal knowledge necessary to testify as a fact witness. Third, Plaintiff argues the exhibits purportedly demonstrating the existence of subcontracts between Avondale and Hopeman lack a foundation, lack authenticity, and are incomplete.

Hopeman opposes the Motion to Strike. As a threshold matter, Hopeman argues that it is not required to support each element of its purported federal defense with "competent proof." R. Doc. 31 at 4. Hopeman argues that removal under the federal officer statute requires only that the federal defense be "colorable," and the courts in the Fifth Circuit have found affidavits, depositions, and contract specifications relevant to the whether a federal defense is colorable. R. Doc. 31 at 5. However, even if "competent proof" is required, Hopeman argues it has met that standard in its pleadings.

5

### III.     LAW & DISCUSSION

Because the documents targeted in Plaintiff's Motion to Strike in large part form the basis of Defendant's Motion for Reconsideration, the Court considers the Motion to Strike first. Once it resolves the evidentiary objections presented in that motion, the Court turns to the merits of Hopeman's jurisdictional argument.

### A. Motion to Strike

Plaintiff asserts that federal jurisdiction exists in this case by virtue of the federal officer removal statute, which is a means to establish federal jurisdiction over a case that would otherwise remain in state court. *Mesa v. California*, 489 U.S. 121, 136 (1989). "The burden of persuasion for establishing [] jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 96–97.

As an initial matter, the parties disagree as to the what constitutes "competent proof" for purposes of federal officer removal. Plaintiff argues the Court may only consider evidence that would be appropriate at the summary judgment stage and is generally admissible under the Federal Rules of Evidence, while Hopeman suggests such an exacting standard is misplaced. Hopeman urges the Court to consider affidavits and deposition testimony prepared in other cases, as well as excerpts of contracts and specifications, in support of its right to assert a federal defense.

Indeed, the answer is not abundantly clear. Although certain courts have entertained evidentiary objections based on the Federal Rules of Evidence in similar circumstances, *see Pizarro v. Astra Flooring Co.*, No. C 19-08425 WHA, 2020 WL 1182604, at *5 (N.D. Cal. Mar. 12, 2020) (concluding that a particular declaration "may . . . come in under Federal Rule of Evidence 702"); *Thompson v. Crane Co.*, No. CIV. 11-00638 LEK, 2012 WL 1344453, at *16 (D.

6

Haw. Apr. 17, 2012), *aff'd sub nom. Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) (considering, but ultimately overruling, evidentiary objections based on lack of personal knowledge and the best evidence rule); *Culver v. Asbestos Defendants (BP)*, No. C 10-03484 SI, 2010 WL 5094698, at *4 (N.D. Cal. Dec. 8, 2010) (conducting an 804(b) analysis and concluding that former trial testimony in an unrelated case was admissible for a motion to remand), courts in this Circuit and others typically require only that the proffered evidence "suffice as a not-insubstantial and non-frivolous basis upon which" a federal defense may be based. *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017); *Melancon v. Lamorak Ins. Co.*, No. CV 17-12367, 2018 WL 480823, at *1 (E.D. La. Jan. 19, 2018), *aff'd*, 742 F. App'x 833 (5th Cir. 2018) (considering deposition testimony plaintiff provided in another case); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.,* No. 3:19MD2885, 2020 WL 365617, at *2 n.8 (N.D. Fla. Jan. 22, 2020) (rejecting plaintiff's argument that the evidence offered to oppose remand was unauthenticated and constituted hearsay because at this stage of litigation, the court "is not deciding whether or not to admit Defendants' exhibits into evidence at a hearing or trial but is simply evaluating them for purposes of a pretrial ruling"); *Walkup v. Air & Liquid Sys. Corp.*, No. CV 12-1635-SLR-SRF, 2013 WL 5448623, at *8 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, No. CV 12-1635-SLR/SRF, 2013 WL 5798701 (D. Del. Oct. 24, 2013) ("Given that [Defendant] has satisfied the removal requirements under Section 1442(a)(1), consideration of the Plaintiffs' Evidentiary Objections . . . is not warranted at this early stage of the proceeding.").

Heeding the Supreme Court's instruction that a removing defendant "need not win his case before he can have it removed," *Willingham v. Morgan*, 395 U.S. 402 (1969), the Court concludes that consideration of Hopeman's exhibits is appropriate at this preliminary stage. This case is not in the summary judgment stage let alone the motion *in limine* stage in which evidentiary objections

are scrutinized before trial. At this stage, the Court is less concerned with the actual merits of the defense than the plausibility of its assertion. *See Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010) (concluding that removal is appropriate under § 1442(a) when "defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense").

Even if Hopeman is required to submit summary judgment type evidence in support of its assertions, the evidence offered here generally satisfies this standard. Courts in the Fifth Circuit routinely consider affidavits when considering removal under § 1442(a). *See, e.g.*, *Latiolais*, 951 F.3d at 296; *Zeringue*, 846 F.3d at 791; *Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020); *Laurent v. City of New Orleans*, No. CIV.A. 14-2022, 2014 WL 5410654, at *3 (E.D. La. Oct. 23, 2014). Federal Rule of Civil Procedure 56(c), governing summary judgment motions, plainly provides that a factual position may be supported by, among other things, "affidavits or declarations," so long as the affidavits are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The affiants at issue here appear to have personal knowledge. Danny Joyce and Edward Blanchard prepared affidavits in other cases discussing the relationship between Avondale and the federal government, Avondale's alleged compliance with government specifications, and Avondale's knowledge of asbestos hazards. R. Docs. 25-8; 25-12. While these affidavits may be devoid of references to Hopeman, Joyce and Blanchard were Avondale employees who clearly had knowledge about Avondale's relationship to and contracts with the federal government. Specifically, Danny Joyce was the director safety and health at Avondale who testified at length about inspections at the Shipyard as well as the federal contracts that governed the specifications

8

of the shipbuilding projects and the requirement that federal inspectors be allowed to inspect the premises. R. Doc. 25-8 at 1. Similarly, Blanchard was employed by Avondale for over forty years as a supervisor, general superintendent, assistant vice president, and vice president, during which time he "oversaw the construction of all vessels." R. Doc. 25-12 at 1. The Court concludes that by virtue of their positions at Avondale, both Joyce and Blanchard have the requisite personal knowledge upon which to base their discussions of the relationship between Avondale and the federal government. Moreover, their testimony is obviously relevant to Hopeman's defense because Hopeman premises its federal defense on its relationship to Avondale as a subcontractor working on government projects.

Mr. Herfel's affidavit, which Plaintiff characterized at oral argument as the "most problematic" also satisfies this standard. Mr. Herfel was listed on the Avondale Defendant's witness list before they settled, and Hopeman has reserved the right to call any other witnesses used in the litigation to support its own defense. R. Docs. 31-9; 31-10. Although the Court need not conduct a full evidentiary assessment of his qualifications as an expert witness at this stage, a cursory review of Mr. Herfel's credentials indicate that he has extensive experience in the maintenance, activation, and deactivation of U.S. Navy and merchant ships as well as expertise with shipboard systems, management, and repair. R. Doc. 25-1 at 2. Mr. Herfel has a degree in Marine Engineering from the U.S. Merchant Marine Academia and a Third Assistant Engineer's License from the U.S. Coast Guard, and served as an Officer in the United States Naval Reserve. R. Doc. 25-5 at 1. He currently serves as the President/CEO of a firm that specializes in the research and analysis of federal naval and merchant marine documents and records. R. Doc. 25-1 at 2. Prior to this role, he worked at a shipyard managing the construction planning, engineering, and repair of vessels. R. Doc. 25-1 at 3. His testimony, albeit prepared in a different case, involves

9

opinions generated through the review of contracts between the federal government and Avondale that required the use of asbestos-containing insulation during the time period in this case. Based on the foregoing, the Court concludes his affidavit is properly considered at this time.

Moreover, although Plaintiff cites caselaw suggesting that "affidavits are not admissible if they were originally used in a different case," R. Doc. 26-1 at 20, the Court notes that evidentiary admissibility is not the issue here. Further, the cases Plaintiff cites in support were at different stages of litigation where the plaintiffs had a more substantial burden than merely demonstrating a "colorable" defense. *See, e.g.*, *Bell v. Am. Eagle Airlines*, No. CV 15-728-SDD-RLB, 2017 WL 1330201, at *1 (M.D. La. Apr. 6, 2017) (motion for summary judgment stage); *Burley-Sullivan v. City of Philadelphia*, No. CIV. A. 00-2413, 2001 WL 1175127, at *4 (E.D. Pa. Sept. 17, 2001) (same); *Hurlbut v. Akal Sec., Inc.*, No. 2:04-CV-121, 2006 WL 8432441, at *2 (S.D. Ga. Feb. 15, 2006) (same); *Employers & Operating Engineers Local 520 Pension Fund v. Waterloo Servs., Inc.*, No. 09-CV-353-DRH, 2009 WL 2143767, at *3 (S.D. Ill. July 15, 2009) (motion for default judgment); *Isaac v. Classic Cleaners of Pelican Landing, Inc.*, No. 2:16-CV-171-FTM-29CM, 2017 WL 632510, at *1 (M.D. Fla. Feb. 16, 2017) (motion for attorney fees). Although the affidavits presented in the instant matter may not be admissible for trial purposes, they do comply with Rule 56(c)'s personal knowledge requirement and constitute competent evidence for purposes of this pretrial inquiry.

Further, courts in the Fifth Circuit have routinely considered deposition testimony when ruling on a motion to remand under § 1442(a). *See, e.g.*, *Latiolais,* 951 F.3d at 297; *Bourgeois v. Huntington Ingalls Inc.*, No. CV 20-1002, 2020 WL 2488026, at *7 (E.D. La. May 14, 2020); *Dempster*, 2019 WL 117657, at *13; *Templet v. Avondale Indus., Inc.*, 274 F. Supp. 3d 469, 474 (E.D. La. 2017), *aff'd sub nom. Templet v. Huntington Ingalls, Inc.*, 720 F. App'x 726 (5th Cir.

2018); *Pitre v. Huntington Ingalls, Inc.*, No. CV 17-7029, 2017 WL 6033032, at *1 (E.D. La. Dec. 6, 2017). To the extent that Plaintiffs here oppose this deposition testimony on the grounds that it constitutes inadmissible hearsay, the Court notes again that evidentiary admissibility is not at issue and that even if it were, the Rules of Evidence provide for the inclusion of former deposition testimony in certain situations, even when parties to the current litigation were not present at the deposition. *See* Fed. R. Evid. 804(b)(1); *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 462 (5th Cir. 1985). This is especially relevant in asbestos cases, where, due to the long latency period of asbestos-related diseases, "witnesses to the exposure of the asbestos are often elderly or deceased." *Danos v. Avondale Indus., Inc.*, 2007-1094 (La. App. 4 Cir. 7/2/08), 989 So. 2d 160, 163. The admissibility of this testimony however, is not before the Court today. At this juncture, the Court considers this deposition testimony only for the purpose of deciphering whether Hopeman has raised a colorable federal defense.

Lastly, Plaintiff conceded at oral argument that the alleged deficiencies with respect to the contract excerpts and specifications—namely, that the documents were unauthenticated, incomplete, and lacked a foundation—had been cured, albeit in a prejudicial manner. The Court recognizes that the last-minute production of these documents may cause undue hardship to Plaintiff, but declines to strike them on that basis alone. Indeed, at this preliminary stage, the importance of these documents to the demonstration of Hopeman's right to proceed in federal court outweighs the prejudicial manner in which they were produced, especially in light of the fact that expeditious resolution of this remand matter is beneficial to both parties.

Lastly, as explained below, at this stage of the litigation the Court is only charged with determining whether Hopeman has a right to invoke the federal officer removal statute. This case turns on whether Hopeman can present a "colorable" federal defense. At this stage, the Court

11

declines to entertain specific evidentiary objections based on the Federal Rules of Evidence. The documents at issue are being considered by the Court, not a jury. Even if some documents do not meet the requisite standard for consideration of a motion for summary judgment, Hopeman has presented succificient other evidence that does pass muster to demonstrate a relationship between Hopeman and the federal government.

## B. Motion for Reconsideration

Having concluded that Hopeman's exhibits may be considered at this stage of litigation, the Court now turns to the merits of Hopeman's jurisdictional arguments.

### 1. Legal Standard

Although the Federal Rules of Civil Procedure do not specifically recognize motions for reconsideration, courts in this Circuit evaluate motions styled as such under Rules 54(b), 59, or 60. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997); *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, No. CIV.A. 11-1659, 2014 WL 1365950, at *1 (E.D. La. Apr. 7, 2014). Rules 59 and 60 govern situations in which the movant seeks review of a final judgment, whereas Rule 54(b) applies to challenges to an interlocutory order, which affect fewer than all the claims among all the parties. *Gulf Fleet Tiger Acquisition, LLC v. Thoma–Sea Ship Builders, LLC*, 282 F.R.D. 146, 151–52 (E.D. La. 2012).

Courts generally analyze motions to reconsider interlocutory orders in keeping with Rule 59(e). *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09–4369, 2010 WL 1424398, at *4 n.54 (E.D. La. Apr. 5, 2010) (collecting cases); *Gulf Fleet*, 282 F.R.D. at 152 n.40 (same). Specifically, courts consider whether: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) the motion

is justified by an intervening change in controlling law. *Fairley v. Wal-Mart Stores, Inc.*, No. CV 15-0462, 2016 WL 2992534, at *2 (E.D. La. May 24, 2016).

The parties dispute whether reconsideration is warranted. Specifically, Plaintiffs maintain that the Court reached the correct result when initially remanding this matter back to state court and that reconsidering that decision would cause a manifest injustice to Plaintiff, who suffers from a terminal illness and may not survive long enough to have her day in court if the trial is continued. Hopeman, however, points out that when the Court granted the remand, there was no opposition on file due to an error on Avondale's part in not filing the required notice. Hopeman was accordingly unaware of the remand motion and unable to object to it through no fault of its own. Weighing the respective positions of the parties, the Court concludes that the scale tips in favor of Hopeman with respect to reconsideration. The Court recognizes the unfortunate reality of Plaintiff's health condition but is unwilling to proclaim that this potential injustice outweighs Hopeman's right to litigate its case in a federal forum, if the facts warranting a federal forum are elucidated. Further, any injustice to Plaintiff is entirely speculative and preventable as this Court would be amenable to scheduling an expedited trial date were it to vacate its prior remand order.

### 2. Removal Jurisdiction

Having concluded that reconsideration of the Court's remand order may be necessary to correct a manifest error of law or fact caused by a filing error by the Avondale Defendants that precluded Hopeman from opposing Plaintiff's motion to remand in a timely manner, the Court considers the merits of Hopeman's arguments against remand. Hopeman argues this case is properly in federal court pursuant to federal officer removal and diversity jurisdiction. R. Doc. 25-3 at 9, 36. The Court considers each argument in turn.

### a. Federal Officer Removal

13

The federal officer removal statute permits "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States" to remove a case originally filed in state court "that ordinary federal question removal would not reach." 28 U.S.C. § 1442(a); *Latiolais*, 951 F.3d at 290. "In particular, section 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response." *Latiolais*, 951 F.3d at 290. "The burden of persuasion for establishing [] jurisdiction, of course, remains on the party asserting it." *Hertz Corp.*, 559 U.S. at 96. The federal officer defense is available to a private, non-governmental entity that acts under the direction of a federal officer.

The purpose of this statute is to provide a federal forum in cases where a defendant is entitled to raise a defense arising out of their official duties. *See Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). "[R]ecognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court,'" the Supreme Court has routinely rejected a "'narrow, grudging interpretation of the statute." *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham*, 395 U.S. at 407). Accordingly, though remand to state court is generally favored when removal jurisdiction is questionable, removal jurisdiction under the federal officer removal statute must be broadly construed. *See Willingham*, 395 U.S. at 407.   Indeed, courts must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction. *See Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992). However, liberal construction does not mean that the statute's broad language should be interpreted to imply limitless application. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147–48 (2007) (reviewing statutory history, context, purpose and language and finding that the fact that a federal agency directs, supervises, and monitors a company's activities in considerable detail does not

14

bring a company within the scope of the statute's language).

The Fifth Circuit recently reconsidered its jurisprudence regarding federal officer removal and, in an *en banc* opinion, clarified that removal under § 1442(a) is appropriate when the removing defendant shows "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296. In so holding, the court overruled a line of cases that relied on a "causal nexus" between the defendant's acts performed under color of federal authority and plaintiff's claims. *Id.* at 291, 296.

Plaintiff challenges the timeliness of removal predicated on federal officer removal under § 1442(a). Accordingly, the Court will address this procedural issue before turning to the merits of this argument.

### i.   Timeliness of Removal

Under 28 U.S.C. § 1446, a civil action must be removed within thirty days of the defendant's receipt of an initial pleading, "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (b)(3). Hopeman contends, as did Avondale, that the Fifth Circuit's decision in *Latiolais* constitutes an "order" or "other paper" for the purposes of removal.

Although decisions in unrelated cases typically do not constitute grounds for removal, the Fifth Circuit has carved out a narrow exception to this rule. In *Green v. R.J. Reynolds Tobacco Co.*, the court held that a decision in an unrelated case may constitute an "order" upon which removal can be based if the same party was a defendant in both cases, the cases involve similar factual circumstances, and the decision resolved a legal issue that has the effect of making the case

removable. 274 F.3d 263, 268 (5th Cir. 2001).

In light of *Green*, the Court concludes that the *Latiolais* decision is an "order" upon which removal can be based. First, Hopeman was a defendant in *Latiolais*. Second, like the instant case, *Latiolais* involved negligence claims stemming from asbestos exposure that occurred while plaintiff worked at Avondale Shipyards. Third, *Latiolais* changed the standard under which cases may be removed under § 1442(a), effectively rendering negligence-based lawsuits removable where removal had previously been precluded.

Prior to *Latiolais*, courts in the Fifth Circuit used a three-part test to determine whether a case could be removed under § 1442(a). This test required removing defendants to show "(1) it [was] a "person" within the meaning of the statute, (2) it acted "pursuant to a federal officer's directions," and (3) it assert[ed] a "colorable federal defense." *Latiolais*, 951 F.3d at 291 (quoting *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396–400 (5th Cir. 1998)). The second prong further required defendants to sufficiently plead a "causal nexus" between plaintiff's claims and defendant's acts performed under federal control. *Id.* In practice, this requirement had the effect of precluding the removal of cases presenting only negligence claims challenging "discretionary acts of [the defendant] free of federal interference." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016), *overruled by Latiolais*, 951 F.3d 286. As another section of the court has explained,

> Put simply, in the Fifth Circuit, the causal nexus element in [asbestos-exposure] cases is met when a plaintiff seeks to recover from a government contractor on a theory of strict liability but is absent when the theory of recovery is restricted to negligence. "For strict liability claims that 'rest on the mere use of asbestos,' a causal nexus is established because 'the government obligates the defendant to use the allegedly defective product that causes the plaintiff's harm.'" But asbestos claims alleging "negligent failure to warn, train, or implement safety procedures do not give rise to federal jurisdiction when unrebutted evidence shows that the government did nothing to direct the shipyard's safety practices."

*Parfait v. Huntington Ingalls Inc.*, No. CV 19-11958, 2019 WL 4297912, at *4 (E.D. La. Sept. 11, 2019) (first quoting *Melancon*, 742 Fed. Appx. at 834, then *Templet v. Huntington Ingalls, Inc.*, 720 Fed. Appx. 726, 726-27 (5th Cir. 2018)) (citations and footnote omitted). Heeding this directive, courts in this Circuit consistently held that asbestos-related negligence claims involving discretionary actions did not satisfy the causal nexus test and accordingly could not be removed to federal court. *Bourgeois*, 2020 WL 2488026, at *3 (collecting cases). Because Plaintiff has only asserted negligence claims against Hopeman, it is clear that removal would have been unwarranted as long as the causal nexus test remained good law.

However, the law changed earlier this year. As discussed in greater detail below, the Fifth Circuit's decision in *Latiolais* overruled the "causal nexus" requirement and replaced it with the requirement that the defendant show that "the charged conduct is connected or associated with an act pursuant to a federal officer's directions." 951 F.3d at 296. Essentially, this change allows negligence claims involving discretionary acts, such as those raised in the instant case against Hopeman, to be removable under § 1442(a).

Based on the foregoing, the Court concludes that the decision in *Latiolais* is an "order" for the purposes of § 1446. Because Avondale removed within thirty days of the order's issuance, and Hopeman's opposition to remand is based on Avondale's notice of removal, the removal is timely. Other courts in this district have reached the same conclusion. *See, e.g.*, *Bourgeois*, 2020 WL 2488026; *Francis v. ITG Brands, LLC*, No. CV 20-997, 2020 WL 2832538, at *3 (E.D. La. June 1, 2020).

Having determined that removal was procedurally proper, the Court turns to the merits of Hopeman's jurisdictional argument. As explained above, Hopeman bears the burden of demonstrating that (1) it asserted a colorable federal defense; (2) it is a "person" within the

17

meaning of the statute; (3) it acted pursuant to a federal officer's directions; and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais*, 951 F.3d at 296. The Court addresses each requirement in turn.

### ii.   Whether Hopeman has asserted a colorable defense

"The bar for what constitutes a 'colorable' defense is not high*." Elie v. Ameron Int'l Corp.*, No. CV 19-13924, 2020 WL 2554317, at *2 (E.D. La. May 20, 2020) "[A]n asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Latiolais*, 951 F.3d at 297 (quoting *Zeringue*, 846 F.3d at 790). Because **§** 1442(a) does not require a defendant to prevail on the merits of his case to predicate removal, "if a defense is plausible, it is colorable." *Id.*

Hopeman asserts two federal defenses: official and derivative sovereign immunity under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), and the government contractor defense under *Boyle v. United Techs. Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). R. Doc. 25-3 at 10. These defenses are largely duplicative of one another. Indeed, it is unclear whether the defenses are extensions of one another or whether separate attention is merited. *Compare Guarisco v. Boh Bros. Constr. Co.*, LLC, 421 F. Supp. 3d 367, 375 (E.D. La. 2019) (explaining that the government contractor defense was first established in *Yearsley* and later expanded in *Boyle*) *with Bourgeois*, 2020 WL 2488026, at *6 (declining to analyze the *Yearsley* defense where defendants had successfully asserted a colorable claim to government contractor immunity under *Boyle*). In any event, Hopeman need only assert a single colorable federal defense for the purposes of § 1442(a), and the Court accordingly considers the government contractor defense as set forth in *Boyle* first.

In *Boyle*, the Supreme Court identified a federal defense that "extends to federal contractors

18

an immunity enjoyed by the federal government in the performance of discretionary actions." *Latiolais*, 951 F.3d at 297. "That defense provides immunity to contractors for conduct that complies with the specifications of a federal contract." *Crutchfield v. Sewerage and Water Board of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016). Specifically, *Boyle* insulates federal contractors from liability if "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512; *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993) (holding that the government contractor defense applies regardless of the label attached to the claim, as long as the three *Boyle* conditions are satisfied). The Court considers each *Boyle* prong in turn.

As an initial matter, Plaintiff argues Hopeman is not entitled to assert this defense because it was not a government contractor. R. Doc. 30 at 11. To this end, Plaintiffs cite the deposition testimony of two corporate officers who specifically disclaimed any direct relationship with the federal government during the relevant period. R. Doc. 30 at 11. Plaintiffs would have these assertions compel the conclusion that Hopeman cannot assert a colorable federal defense, pointing to two cases from this district in which it was found that subcontractors "with no direct contractual relationship with the federal government [could] not invoke the federal officer removal statute." R. Doc. 30 at 13 (emphasis omitted) (citing *Morgan v. Great S. Dredging, Inc.*, No. CIV.A. 11-2461, 2012 WL 4564688, at *6 (E.D. La. Sept. 30, 2012); *Addotto v. Equitable Shipyards, LLC*, No. CIV.A. 13-5807, 2014 WL 1389632, at *4 (E.D. La. Mar. 31, 2014)). In *Morgan*, the court held that "because [defendant] was not a government contractor itself, but merely a subcontractor . . ., it does not have a "colorable" federal contractor defense." 2012 WL 4564688, at *6. Applying

19

the same logic and citing *Morgan*, the court in *Addotto* held that a subcontractor could not meet the requirement that it acted under the color of a federal officer. 2014 WL 1389632, at *4.

The Court declines to rely on the non-binding opinions in *Morgan* and *Addotto* and refuses to categorically deny the applicability of *Boyle* to at least certain subcontractors who perform work that is specifically authorized by and provided for in government contracts. In *LaForge v. ECC Operating Servs.*, another section of this court rejected the argument that a defendant subcontractor could not avail himself of the government contractor defense merely because "it did not itself contract directly with the government." No. CIV.A 07-523, 2010 WL 497657, at *1 (E.D. La. Feb. 5, 2010). The *LaForge* court additionally explained that the plaintiff's positions—that subcontractors could not avail themselves of the government contractor defense—was "at odds with the purpose of the government contractor defense." *Id.* Reasoning that the purpose of the defense was at least in part to prevent "the financial burden of liability judgments against government contractors [from being] passed through the United States," the court explained that precluding subcontractors from asserting the defense would allow subcontractors exposed to liability to "pass those increased costs to the prime contractors who will subsequently pass them to the government." *Id.* (quoting *Bailey*, 989 F.2d at 798). The *LaForge* court further noted that the Fifth Circuit had "expressly reserved ruling" on the issue and that the Third and Fourth Circuits do not preclude subcontractors from asserting the defense. *Id.* (citing *Garner v. Santoro*, 865 F.2d 629, 637 (5th Cir.1989); *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67 (3d Cir. 1990); *Ramey v. Martin–Baker Aircraft Co.*, 874 F.2d 946, (4th Cir. 1989)).

Indeed, the Fifth Circuit has on several occasions suggested that the defense is applicable to subcontractors. *See, e.g.*, *City of Walker v. Louisiana through Dep't of Transportation & Dev.*, 877 F.3d 563, 570 (5th Cir. 2017) (declining to find the government contractor defense colorable

where "nothing about the contract suggest[s] that [Defendant] was operating as a federal government contractor or *subcontractor*"(emphasis added)); *Humphries v. Elliott Co.*, 760 F.3d 414 (5th Cir. 2014) (holding that a subcontractor had not waived the government contractor defense); *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 437 (5th Cir. 2000) (applying the government contractor defense to the supplier of a component to a military aircraft); *Garner*, 865 F.2d at 637 n.13 (declining to adopt a per se rule that precludes a party without a direct government contract from asserting the government contractor defense). This opinion is shared by courts in other Circuits as well. *See, e.g.*, *Tate v. Boeing Helicopters*, 140 F.3d 654 (6th Cir. 1998); *Maguire*, 912 F.2d 67; *Ramey*, 874 F.2d 946; *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066A, 2013 WL 5723324, at *10 (W.D.N.Y. Oct. 21, 2013); *Griffin v. JTSI, Inc.*, No. CIV. 08-00242 ACK, 2009 WL 8761211, at *12 (D. Haw. July 28, 2009); *Schwindt v. Cessna Aircraft Co.*, No. CV485–472 (S.D. Ga. Aug. 31, 1988).

Here, Hopeman has offered evidence that the three *Boyle* conditions are satisfied, at least to the extent necessary to state a colorable federal defense. First, Hopeman must show that government "approved reasonably precise specifications" regarding the contractor's work. *Boyle*, 487 U.S. at 512. "This assures that 'the government, and not the contractor, is exercising discretion in selecting the design.'" *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 419 (5th Cir. 2001) (quoting *Stout v. Borg–Warner Corp.*, 933 F.2d 331, 334 (5th Cir. 1991)). Courts in the Fifth Circuit had found this element satisfied when the government supplies the relevant specifications that govern the work. *See Winters*, 149 F.3d at 400 (citing *Smith v. Xerox Corp.*, 866 F.2d 135, 138 (5th Cir. 1989)). Here, Hopeman is being sued in connection to its work installing asbestos-containing wallboard on federal vessels pursuant to a joiner subcontract between Hopeman and Avondale. Hopeman argues this work was required by contracts between Avondale and the federal

21

government, which in turn "established the mandatory terms, conditions, [and] specifications imposed upon Hopeman" as a subcontractor. R. Doc. 25-3 at 23. Indeed, Hopeman has presented evidence at least plausibly demonstrating that the installation of asbestos-containing wallboard was required by the government contracts with Avondale and in turn the subcontracts between Avondale and Hopeman. The contracts governing the Coast Guard Cutters and the Lykes vessels specifically called for the joiner to install asbestos-containing materials on the vessel. R. Docs. 25-4 at 8; 25-5 at 6. Further, Hopeman has submitted excerpts of joiner subcontracts between Hopeman and Avondale demonstrating that the joiner work was subject to the very same specifications that governed Avondale's work for the federal government. R. Docs. 25-7; 25-9. This evidence is sufficient to sustain Hopeman's burden with respect to the first Boyle factor.

Second, Hopeman must demonstrate that its work conformed with the government's specifications and regulations. Hopeman argues that this element is satisfied because its work was constantly subject to federal oversight and because it would have breached the subcontracts had it not used the specific asbestos-containing wallboard required by the federal contracts. R. Doc. 25-3 at 15. Hopeman has presented sufficient evidence to demonstrate that its work did indeed conform with government specifications. Specifically, the contract specification submitted by Hopeman suggests that the government required the installation of asbestos-containing wallboard in federal vessels and that Hopeman, as the installer of the wallboard, would have been in breach of contract had it failed to use the asbestos-containing materials. Further, Hopeman has presented evidence that its work was routinely under federal inspection. In particular, the testimony of former Avondale employee Peter Territo indicates that federal representatives routinely inspected the Avondale premises as well as the interior of the ships on which Hopeman employees worked. R. Doc. 25-13 at 3–4. In addition, affidavits prepared by Danny Joyce and Ed Blanchard indicate that

federal inspectors from MARAD and the Coast Guard were authorized to ensure compliance with the contract specifications. R. Docs. 25-8, 25-12. Plaintiff nevertheless argues Hopeman actually *violated* federal law by failing to warn and take appropriate safety measures, such that it cannot offer any evidence of compliance with government specifications. R. Doc. 30 at 17. However, because the Court does not assess the merits of Hopeman's defense at this stage and instead merely determines whether its defense is "colorable," Plaintiff's argument is not relevant at this time. *See also Savoie*, 2017 WL 2391264, at *7 (declining to allow plaintiffs' arguments that defendant failed to comply with the federal contract's safety requirements to prevent the assertion of a colorable *Boyle* defense).

Third, Hopeman must show that it warned the government about the dangers of asbestos "that were known to the supplier but not to the United States." *Boyle*, 989 F.2d at 801. In other words, the government must have known "at least as much as [Hopeman] did" of the risks associated with asbestos exposure during the relevant time period. *See Elie*, 2020 WL 2554317, at *2. "This requirement exists to prevent contractors from being incentivized to withhold safety information from the government." *Savoie*, 2017 WL 2391264, at *7. The element is satisfied by evidence that the government was aware of the dangers. *See id.* (citing *Williams v. Todd Shipyards Corp.*, 154 F.3d 416, 1998 WL 526612, at *4 (5th Cir. 1998)). In support of this prong, Hopeman has provided the deposition testimony of Dr. Lemen, a seasoned expert witness in asbestos litigation, who explained that the United States Public Health Service had collected and reviewed scientific literature about asbestos hazards since the 1930s. R. Doc. 25-3 at 25–26. Further, Danny Joyce's affidavit indicated that the government agencies responsible for oversight at Avondale "had sophisticated medical and industrial hygiene departments, employees and consultants with state-of-the-art knowledge of the hazards of asbestos." R. Doc. 25-8 at 4. This evidence is

23

sufficient to make a colorable showing that the government was aware of asbestos hazards associated with Hopeman's work during the relevant time period.

Because Hopeman has colorable arguments with respect to each *Boyle* condition, the Court concludes that it has raised a colorable federal defense. At this juncture, the Court expresses no opinion as to the merits of the defense. Because a single colorable defense is sufficient to invoke federal officer removal, provided the other elements of the statute are satisfied, the Court declines to separately consider Hopeman's sovereign immunity defense.

### iii. Whether Hopeman is a "person" within the meaning of the statute

"[T]he Supreme Court has long recognized that the removal statute also applies to private persons and corporate entities 'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Savoie*, 817 F.3d at 461 (quoting *Watson*, 551 U.S. at 151). Plaintiff offers no meaningful opposition to this element of federal officer removal, and the Court considers it satisfied.

### iv. Whether Hopeman acted pursuant to a federal officer's directions

This element requires the purported contractor to establish that it was acting under the direction of the federal government at the time the acts giving rise to the complaint occurred. *Zeringue*, 846 F.3d at 792. This broad requirement refers to "subjection, guidance, and control" and involves, at a minimum, "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* (quoting *Watson*, 551 U.S. at 151–52). To establish this element, the purported contractor need only show that it "help[ed] the Government to produce an item that it needs . . . . [or] perform[ed] a job that, in the absence of a contract with a private firm, the Government itself would have to perform." *Watson*, 551 U.S. at 154. "Direct oversight of the specific acts that give rise to a plaintiff's complaint is not required." *Zeringue*, 846 F.3d at 792.

Here, Plaintiff's claims against Hopeman involved the installation of asbestos-containing wallboard on vessels Hopeman plausibly asserts were built pursuant to contracts with the Coast Guard and MARAD, specifically Coast Guard Cutters and Lykes vessels. Hopeman argues it is being sued for acts performed at the direction of the federal government—namely, the United States Coast Guard and MARAD. To support this claim, Hopeman cites an affidavit prepared for a different case by maritime historian Christopher Herfel. R. Doc. 25-5. In his affidavit, Herfel explains that Lykes vessels were constructed pursuant to the Merchant Marine Act of 1936, which authorized MARAD to partially subsidize the construction of merchant vessels and required these vessels to be equipped with certain "National Defense Features" to ensure that the vessels could be used as Naval Auxiliaries in the event of war. R. Doc. 25-5 at 5–6. Lykes vessels, Herfel continued, were constructed according to specifications reviewed by the United States Navy and MARAD, which specifically "required the use of at least some asbestos containing materials." R. Doc. 25-5 at 6. Herfel further explained that U.S. Coast Guard Cutters were also constructed pursuant to highly specific federal requirements, including the requirement that certain asbestos-containing products be used. R. Doc. 25-5 at 8–10. Lastly, Herfel explained that the federal contracts incorporated specifications for the joiner work aboard the vessels and specifically required that divisional bulkheads be fabricated with Johns-Manville Marinite 36, which contained 40% amosite asbestos. R. Doc. 25-5 at 11. As Herfel explained, "Avondale was required to use this specific product, and no other, in the construction of these ships." R. Doc. 25-5 at 11. It is this joiner work, Hopeman contends, that Avondale subcontracted to Hopeman.

Based on Mr. Herfel's affidavit, it is apparent that the vessels upon which Hopeman installed asbestos-containing wall board were financed by, and subject to the authority of, the federal government. The joiner work performed by Hopeman was an essential compenent of the

construction process laid out in the contract between Avondale and the government, and the construction of these vessels helped the government perform a job that it would otherwise have to perform itself. The subsidization of the Lykes vessels was specifically predicated on the understanding that these vessels could be commandeered for use in times of war. *See Dempster*, 2020 WL 468611, at *11. In light of evidence that Hopeman installed wallboard on Lykes vessels and Coast Guard Cutters that were financed by the federal government and accordingly subject to exacting specifications during the relevant time period, the Court finds that this element of § 1442(a) has been established.

### v. Whether the charged conduct is connected or associated with an act pursuant to a federal officer's directions

In *Latiolais*, the Fifth Circuit interpreted the Removal Clarification Act of 2011, which amended § 1442(a) to reflect that a removable claim is one "relating to any act under color of" federal office, as "broaden[ing] federal officer removal to actions, not just causally connected, but alternatively connected or associated, with acts under color of federal office." *Latiolais*, 951 F.3d at 292. As the *Latiolais* court broadly pronounced, "Subject to the other requirements of section 1442(a), any civil action that is connected or associated with an act under color of federal office may be removed." *Id.* at 296. In *Latiolais*, for example, the court reasoned that this requirement was satisfied because the defendant allegedly failed to warn the plaintiff of, or protect the plaintiff from, the dangers of asbestos—negligent acts that were "connected with the installation of asbestos during the refurbishment" of a vessel allegedly performed "pursuant to directions of the U.S. Navy." *Id.* at 14.

The "connection" condition of removal is satisfied here. Hopeman has been sued for its alleged failure to warn Plaintiff and Plaintiff's father about the dangers of asbestos and failure to take certain precautions to prevent asbestos exposure. These allegedly negligent acts occurred

while Hopeman was executing a joiner subcontract calling for the installation of wallboard on federal vessels, specifications for which were provided by the Coast Guard, the Navy, and MARAD. Accordingly, Hopeman's challenged conduct is connected with acts under color of federal office, thus satisfying this final requirement for removal. The Court therefore has jurisdiction over this matter pursuant to the Federal Officer Removal Statute.

### b. Diversity Jurisdiction

Hopeman alternatively contends that removal is appropriate on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). R. Doc. 25-3 at 36. Hopeman argues that Plaintiff has indicated, through emails between counsel, that she does not intend to pursue claims against Taylor Seidenbach or Eagle, Inc., the only remaining Louisiana defendants in this matter. Accordingly, Hopeman argues that Taylor Seidenbach and Eagle, Inc. are improperly joined and that their citizenships should be disregarded for the purposes of removal. In support, Hopeman cites *Wilson v. Republic Iron & Steel Co.*, in which the Supreme Court held that joinder is fraudulent where "it is apparent that the [non-diverse entity] was joined as a Defendant without any purpose to prosecute the action in good faith as against the remaining defendant and with the purpose of fraudulently defeating the other's right of removal." R. Doc. 25-3 at 36 (quoting 257 U.S. 92, 98 (1921)).

Having concluded that Hopeman may remove this case pursuant to § 1442(a), the Court need not entertain this argument at this time. Nevertheless, the Court notes that Hopeman's improper joinder argument would be difficult to support, as Plaintiff has consistently affirmed that it has valid claims against non-diverse defendants Taylor Seidenbach and Eagle, Inc. and that these parties remain active in the case at this time. Hopeman's citation to a single email from Plaintiff's counsel in which it indicates that Plaintiff anticipates settling or dismissing these parties does not

constitute sufficient proof that the non-diverse parties are fraudulently joined.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Strike, R. Doc. 26, is **DENIED**.

**IT IS FURTHER ORDERED** Hopeman's Motion to Reconsider, R. Doc. 11, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court's Order and Reasons, issued May 11, 2020, be and hereby is **VACATED**.

**IT IS FURTHER ORDERED** that Hopeman's Motion to Expedite, R. Doc. 15, is **DENIED AS MOOT**.

New Orleans, Louisiana this 29th day of June, 2020.

_____
Eldon E. Fallon
United States District Court